**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allen Rude, ) | No. CV-11-01966-PHX-FJM |
| )  Plaintiff, ) | **ORDER** |
| ) vs. ) | |
| ) Intel Corp. Long Term Disability Plan;) Intel Corp.; Aetna Life Insurance Co., ) ) Defendants. ) ) | |

The court has before is defendants' motion for summary judgment (doc. 45), plaintiff's response (doc. 57), defendants' reply (doc. 63); plaintiff's motion for summary judgment (doc. 47), defendants' response (doc. 52), and plaintiff's reply (doc. 64). We also have before us the parties' motion for direction from the court (doc. 67).

**I**

Plaintiff, a claimant under the Intel Corporation Long Term Disability Plan (Plan), brought this action against the Plan and Aetna Life Insurance Company, the plan administrator, challenging the denial of LTD benefits. Aetna determined that plaintiff does not qualify for benefits under Intel's LTD Plan because he did not submit Objective Medical Findings (as that term is defined in the Plan) which establish that he is incapable of performing his sedentary systems analyst position.

Intel provides a self-funded LTD Plan for its employees. It delegated claims administration responsibility to Aetna, who has "the discretionary authority to interpret the

Plan in order to make eligibility and benefit determinations as to whether any individual is entitled to receive benefits under the Plan." DSOF ¶ 6. The Plan is designed to cover only those conditions that are "substantiated by Objective Medical Findings and which render[ ] a Participant incapable of performing work." DSOF ¶ 4. The Plan defines "Objective Medical Findings" as:

> measurable, independently-observable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRIs, EEGs, ECGs, "Catscans" or similar tests that support the presence of a disability or indicate a functional limitation.

AR 1215. Specifically excluded from the definition of "Objective Medical Findings" are "tests that depend on Participant self-reports," "[t]ests whose results vary depending on the Participant's expenditure of effort," "physicians' opinions or other third party opinions based on the acceptance of subjective complaints," and "labor market and other non-medical factors." Id.

Plaintiff first filed a claim for a leave of absence and short-term disability under Intel's short-term disability plan. Dr. Connie Sterling, plaintiff's primary care physician, supported the claim for benefits "at plaintiff's request" due to plaintiff's self-reports of pain, fibromyalgia, and nonrestorative sleep. DSOF ¶¶ 16, 22. On May 28, 2009, Dr. Sterling submitted her final attending physician report stating that she did "not feel qualified to certify absence beyond 6/30/2009." DSOF ¶ 22. In other words, Dr. Sterling was unwilling to certify disability beyond the short-term disability period.

Once the short-term benefits had been exhausted, plaintiff filed a claim for LTD benefits. In support of his initial claim, plaintiff submitted reports by his new treating physician, Dr. Steve Fanto. After examining plaintiff one time, and based upon plaintiff's self reports of "severe pain [and] fatigue," Dr. Fanto concluded that plaintiff had "no ability to work" and would "never" be able to return to work. DSOF ¶ 24. Six months later, Dr. Fanto reported that plaintiff's "pain complaints [are] adequately controlled with medication management." DSOF ¶ 27.

On January 8, 2010, Aetna denied plaintiff's claim for LTD benefits, concluding that

plaintiff had not submitted Objective Medical Findings to substantiate that he is incapable of performing work on a full-time basis. DSOF ¶ 31.

Plaintiff filed an administrative appeal and submitted additional medical records for Aetna's Appeals Committee's consideration, including X-ray and MRI reports, attorney-generated checklists by Dr. Steve Fanto and Dr. Haagen Diener, a functional capacity evaluation ("FCE"), and an employability and earning capacity assessment ("EECA"). DSOF ¶ 36. Dr. Diener filled out a checklist indicating that he had reviewed plaintiff's medical records and in his opinion the "objective medical findings . . . substantiate [plaintiff's] inability to perform the duties of his prior and/or any other occupation." AR 717. Specifically, Dr. Diener stated only that "X-rays demonstrate arthritis, [and] physical exam demonstrates decreased range of motion." Id.

On appeal, Aetna retained four medical experts in specialized fields to review plaintiff's medical records. Aetna sent plaintiff's treating physicians copies of the specialists' reports and informed plaintiff's lawyer that he could submit additional documentation for review on appeal. DSOF ¶ 47. Plaintiff did not submit additional records.

The Appeals Committee considered the evidence of record and upheld the denial of benefits. DSOF ¶¶ 49-50. The Committee explained that reviewing physician, Dr. Tamara Bowman, an internal medicine specialist, found that "[f]rom an internal medicine standpoint, there is no documentation of clinical findings to support any functional impairment." AR 548. Dr. Philip Marion, a physical medicine and rehabilitation specialist, concluded that the FCE findings and Dr. Fanto's report that plaintiff was incapable of working were "contrary to the lack of objective findings via physical examination or radiological studies to support such a degree of restricted activity." DSOF ¶ 46. Reviewer Dr. Kelly Agnew, a board certified orthopedist, opined that the "results of the [FCE] would not be consistent with imaging data," DSOF ¶ 42, and "[e]ven with arthritic complaints, there is nothing which would preclude full time sedentary duties." DSOF ¶ 46. Finally, Dr. Agnew opined that Dr. Fanto's "suggestion that [plaintiff] is unemployable would not withstand scientific scrutiny." DSOF ¶ 42. Dr. Agnew concluded that "[a]ll in all a full time sedentary level of activity

- 3 -

1  could be expected." DSOF ¶ 46, AR 859. The Appeals Committee concluded that "there
2  [is] insufficient medical evidence as required by the Plan to support his inability to perform
3  the work of his regular occupation as of 01/15/10 and thereafter." AR 548.

## II

5  A claim challenging the denial of benefits will be reviewed for an abuse of discretion
6  where the plan gives the administrator discretionary authority to determine eligibility for
7  benefits or to construe the terms of the plan. Metropolitan Life Ins. Co. v. Glenn, 554 U.S.
8  105, 111, 128 S. Ct. 2343, 2348 (2008); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,
9  963 (9th Cir. 2006). Here, the Intel Benefits Administrative Committee unambiguously
10 delegated to Aetna "the discretionary authority to interpret the Plan in order to make
11 eligibility and benefit determinations." DSOF ¶ 6. Therefore, we apply an abuse of
12 discretion standard, under which we will uphold a plan administrator's decision to deny
13 benefits if it is based on a reasonable interpretation of the plan's terms and if it was made in
14 good faith. McDaniel v. Chevron Corp., 203 F.3d 1099, 1113 (9th Cir. 2000).

15 The presence of a conflict of interest does not affect the standard of review. Abatie,
16 458 F.3d at 965 ("[A]buse of discretion review applies to a discretion-granting plan even if
17 the administrator had a conflict of interest."). Instead, a reviewing court will consider the
18 conflict as a factor in determining whether the plan administrator abused its discretion in
19 denying benefits. Glenn, 554 U.S. at 108, 128 S. Ct. at 2346. "An egregious conflict may
20 weigh more heavily (that is, may cause the court to find an abuse of discretion more readily)
21 than a minor, technical conflict might." Abatie, 458 F.3d at 968.

## A

23 The Intel Plan defines "disability" as "[a]ny illness or injury that is substantiated by
24 Objective Medical Findings and which renders a Participant incapable of performing work."
25 DSOF ¶ 4. Plaintiff contends that he is disabled "due to a host of medical problems
26 including degenerative disc disease of the spine with a lumbar radiculopathy, both
27 objectively confirmed by MRI Scan." PMSJ at 4.

28 Aetna denied plaintiff's LTD claim, concluding that "[m]ultiple radiological studies

- 4 -

were consistently documented as normal, negative, or age appropriate. . . . Neurological examination was consistently documented as normal.  There was no evidence of specific inflammatory joint disease on physical examination.  Multiple radiological studies demonstrate age appropriate degenerative changes without evidence of acute significant pathology." AR 548.  The MRI of the lumbar spine was "essentially negative" and two other MRIs "reflect[ed] mild degenerative changes" to the mid-cervical spine and "no evidence of acute osseous traumatic injuries of the shoulder with only degenerative changes of acromioclavicular joints with the right greater than the left." AR 526.  Aetna determined that the MRIs did not "substantiate [that plaintiff was] incapable of performing work on a full time basis." Id.

Plaintiff contends that Aetna abused its discretion by failing to credit Dr. Fanto's opinion that plaintiff is unable to work.  Dr. Fanto's examination revealed that plaintiff is "in moderate distress secondary to pain.  Ambulates with a marked antalgic gait.  Range of motion of the low back limited in forward flexion and extension." PSOF ¶ 17.  Dr. Fanto's diagnosis was severe osteoarthritis, degenerative joint disease, and myofascial dysfunction. PSOF ¶ 16.  However, Dr. Fanto's opinions are largely based on plaintiff's subjective complaints and therefore are not Objective Medical Findings under the Plan.  See Plan § 2.13 ("physicians' opinions . . . based on the acceptance of subjective complaints" such as pain do not constitute "Objective Medical Findings."). AR 1215.

Plaintiff also relies on the FCE and EECA reports which concluded that he is unable to perform any work.  But these reports also do not constitute Objective Medical Findings under the Plan.  The FCE relies on test results that depend on plaintiff's "expenditure of effort," id., and the EECA analyzes "local labor market and other non-medical factors," id. Although this type of evidence may be considered "corroborative evidence of Disability, if the Participant also presents other test results or clinical evidence that independently satisfy the Objective Medical Findings definition," id., these records will not establish disability alone. Plaintiff did not provide any other Objective Medical Findings that support a finding of disability.

Plaintiff next contends that defendants improperly interpreted and applied the terms of the Plan, acknowledging on the one hand that Objective Medical Findings exist, but still refusing to find that he is eligible for benefits. The Appeals Committee determined that, "although certain of [plaintiff's] diagnoses have been supported by objective medical findings," there remained "a lack of documentation to support that [plaintiff] has been prevented from performing the work of his regular occupation." AR 548-49. There is no inconsistency in this conclusion. Aetna acknowledged that Objective Medical Findings existed showing some impairment, but none of the findings was severe enough to establish that plaintiff is unable to work.

We also reject plaintiff's argument that Aetna abused its discretion by failing to engage plaintiff "in a dialogue so he knew what to submit and could perfect the record on appeal." PSMJ at 7. Aetna sent plaintiff three letters describing the type of information needed to support his LTD claim. DSOF ¶¶ 28-30. The initial denial letter specifically described additional documentation that he should submit with his appeal. DSOF ¶ 33. Aetna also attempted to contact plaintiff's treating physicians to allow them to comment on the peer reviewer's findings, but plaintiff's treating physicians refused to participate. DSOF ¶¶ 47-48. Moreover, plaintiff's counsel "indicated that no other information was intended for the appeal review. There does not appear to be any additional information that is available, but not submitted for review." DASOF ¶ 15. Plaintiff had ample opportunity to perfect the record on appeal.

Finally, plaintiff contends that Aetna's Appeals Committee abused its discretion by ignoring the Social Security Administration's finding of disability. But plaintiff did not submit the report until February 3, 2011, after the Appeals Committee issued its decision. DSOF ¶ 54. A plan administrator cannot abuse its discretion by failing to consider evidence that was not before it. Moreover, the standard for granting benefits under the Plan is markedly different from the regulatory standards under the Social Security Act.

**B**

Plaintiff argues that we must apply a "heightened scrutiny" to our abuse of discretion

- 6 -

1    analysis because defendants' significant bias led to the denial of plaintiff's claim. P's
2    Response at 7. Plaintiff contends that a conflict of interest is demonstrated by the fact that
3    Intel's Quality Assurance Review Unit (IQAR) reviewed his claim after Aetna's final denial.
4    However, the IQAR does not provide a substantive review of disability decisions. Instead,
5    it offers a review of processes and procedures used in the determination of claims in order
6    to ensure that correct procedures are followed. DSOF ¶¶ 51, 53; AR 1126.

7    On May 25, 2011, plaintiff requested a review by the IQAR team, and acknowledged
8    that the team "does not have the authority to overturn or supersede Aetna's February 3, 2011
9    claim determination." DSOF ¶ 54. On September 9, 2011, the IQAR notified plaintiff that
10   its review "did not reveal errors in processing [his] LTD appeal." Id. The IQAR decision
11   also offered plaintiff the opportunity to engage in an additional appeals process with an
12   independent reviewer at no cost to plaintiff. DSOF ¶ 55. Plaintiff chose not to pursue
13   another appeal and instead filed this lawsuit.

14   By reviewing the processes and procedures, without authority to overturn claims
15   decisions, Intel did not act as a claims administrator so as to create the kind of structural
16   conflict of interest identified in Abatie, 458 F.3d at 965. Instead, the initial claims decision
17   and the decision on appeal were made by Aetna, a third-party Plan Administrator. It is the
18   Plan Administrator's decision that is the subject of this review. Any conflict of interest
19   attributable to Intel's review for procedural compliance does not affect our abuse of
20   discretion review of Aetna's claims decision.

21   Plaintiff also argues that a conflict is demonstrated by the fact that Intel paid Aetna
22   for its claims administration services. However, the fee for processing an LTD claim was
23   fixed at $690 per claim, without regard to the Aetna's disability determination. DASOF ¶
24   3. Moreover, the Services Agreement between Intel and Aetna required Aetna to process
25   claims accurately and "in accordance with the highest professional standards," DASOF ¶ 4,
26   and subjected Aetna's performance to audit in order to "ensure compliance with th[e]
27   Agreement." DASOF ¶ 5. If Aetna incorrectly denied a claim, it was required to correct the
28   error at no cost to Intel. Id. An improper claims denial subjected Aetna to a penalty. Id.

1  The fact that Intel paid Aetna for claims administration by itself does not demonstrate a
2  conflict. The contractual safeguards imposed by the Services Agreement serve to ensure
3  accurate and reasonable claims determinations and reduces any possibility of a conflict of
4  interest.

5  Finally, plaintiff argues that a conflict is demonstrated by defendants' history of
6  parsimonious claims handling. Plaintiff submitted evidence that only 35.71% of Intel's
7  initial LTD claims were approved in 2010, and 41.27% of initial claims were approved in
8  2009. Plaintiff also submitted evidence showing that reviewing physician Dr. Tamara
9  Bowman found in 88.14% of the cases that the claimant was not disabled.

10  The evidentiary value of these figures is questionable. First, we note that these are
11  approval rates for *initial* claims, not *final* claims decisions. Our task is to review *final*
12  disability determinations. Moreover, without expert testimony regarding an acceptable
13  benchmark for approval rates, or evidence that Dr. Bowman or other reviewing physicians
14  wrongly denied claims, these statistics provide minimal evidence of a conflict.

15  Plaintiff's proposed evidence of conflict, though considered in our abuse of discretion
16  review, does not alter our conclusion that Aetna reasonably determined that plaintiff is not
17  disabled under the terms of the Plan.

**III**

19  We conclude that plaintiff failed to establish that Aetna acted arbitrarily or
20  capriciously in denying plaintiff LTD benefits.

21  **IT IS ORDERED GRANTING** defendants' motion for summary judgment (doc. 45).
22  **IT IS FURTHER ORDERED DENYING** plaintiff's motion for summary judgment
23  (doc. 47). The clerk shall enter final judgment.
24  **IT IS FURTHER ORDERED DENYING** as moot the parties' motion for direction
25  from the court (doc. 67).

26  DATED this 27th day of March, 2013.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge

- 8 -